**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**LINDA ROSE ADAMS,**

    **Plaintiff,**

vs.                                              Case No.: _____

**CLEVELAND CLINIC FLORIDA**       **JURY TRIAL AND**
                                                                   **INJUNCTIVE RELIEF DEMANDED**

    **Defendant.**

_____/

**COMPLAINT**

**COMES NOW** Plaintiff, LINDA ROSE ADAMS, by and through undersigned counsel, hereby files her complaint against Defendant, CLEVELAND CLINIC FLORIDA, and in support states and alleges as follows:

**PARTIES**

1. Plaintiff, LINDA ROSE ADAMS (hereinafter "Plaintiff" or "ADAMS"), is a resident and citizen of Palm Beach County, State of Florida, a person with a disability pursuant to the definitions of applicable federal anti-discrimination laws, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq. (the "ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "RA"), and, otherwise, *sui juris*.

2. Defendant, CLEVELAND CLINIC FLORIDA, (hereinafter "Defendant," "CLEVELAND CLINIC," or "CLEVELAND"), is a Florida non-profit corporation with its principal place of business in Palm Beach County, State of Florida.

**JURISDICTION VENUE**

3. This Court has original jurisdiction over the subject matter of Plaintiff's causes of action, pursuant to 28 U.S.C. §§ 1331 and 1343, because they arise under the ADA and/or RA.

4. Defendant resides in Palm Beach County, Florida which is within the confines of the Southern District of Florida. 28 U.S.C. § 89(c). Venue in this Court is therefore proper pursuant to 28 U.S.C. § 1391(b)(1).

5. All conditions precedent to the bringing of this action by Plaintiff has occurred, or their performance has been waived by Defendant.

## GENERAL ALLEGATIONS

6. At all times material hereto, ADAMS was a qualified individual with a disability, as defined by the ADA and RA, by virtue of being profoundly deaf. Further, Adams' primary mode of communication is American Sign Language ("ASL").

7. In addition, ADAMS suffers from a hematologic disorder called pancytopenia, including hemolytic anemia, a disorder in which red blood cells are destroyed faster than they can be made, thrombocytopenia, a condition in which a person has a low blood platelet count, and leukopenia, a condition where one has too few white blood cells. The condition causes a range of symptoms which affect everyday life activities by multiple infections, severe anemia, fatigue and difficulty breathing, and bleeding.

8. Upon information and belief, at all times material hereto, Defendant, directly or through holding corporations, owns, operates, and/or manages the day-to-day affairs of Cleveland Clinic Florida and the various offices operated under that name in West Palm Beach, Florida.

9. Further, Defendant is a recipient of federal Medicaid funds and are, therefore, subject to the requirements of the RA.

10. In order to receive Medicaid funding, Defendant is required to develop policies and procedures that ensure that persons who are deaf or hard of hearing will receive adequate and effective communication.

11. Each time Defendant re-certifies for Medicaid funding, they promise to provide and adhere to such policies.

12. Upon information and belief, Defendant has not provided proper training on the treatment of patients who are hearing impaired.

13. Upon information and belief, Defendant has statutorily inadequate alternative devices for translating American Sign Language by electronic means.

## SPECIFIC ALLEGTIONS

14. On or about December 4, 2018, ADAMS was seen by her physician Dr. Grossman, a doctor at CLEVELAND CLINIC regarding her symptoms of jaundiced skin and fatigue.

15. Dr. Grossman referred ADAMS to CLEVELAND CLINIC for a blood transfusion.

16. Upon appearance at the hospital, and due to the complexity of her conditions, ADAMS requested a sign language interpreter to have effective communications, from the nurse and the doctors at each time seen. No ASL interpreter was provided to ADAMS on the date of her admission.

17. On or about December 5, 2018, ADAMS was admitted to the Intensive Care Unit (ICU) due to her decreased levels of hemoglobin and other diagnostic test results.

18. Due to the lack of an ASL interpreter, ADAMS did not know she required admission to the hospital as a result of her medical testing until she was shown a gown to change into.

19. ADAMS was not prepared for admission to the hospital, and did not have her hearing aid, glasses or contact lenses, and thus could neither lip-read or read documents reliably.

20. In her ICU admission document dated December 5, 2018, ADAMS is described as being admitted into the ICU for "life threatening or critical illness or medical/surgical

problem(s)…" but the same note states that the patient history was "obtained for chart review since patient is deaf" and no review of systems could be performed since patient is hard of hearing.

21. This admission document contained errors in ADAMS' medical allergy to diphenhydramine.

22. The lack of communication on December 5, 2018, did not permit ADAMS to adequately communicate her medical history, including her past adverse reactions to steroidal medications, and a steroidal medication was in fact prescribed and administered against her wishes.

23. The lack of communication on December 5, 2018 did not permit ADAMS to communicate her medical allergies, and CLEVELAND did not notice that she is allergic to diphenhydramine, also known as Benadryl.

24. Diphenhydramine/Benadryl was prescribed and administered to ADAMS throughout her inpatient treatment.

25. The next morning, on December 6, 2019, ADAMS again requested an ASL translator from all staff and doctors who appeared but was told that none was available.

26. The attending physician, Dr. Chakra Chaulagain, attempted to communicate in writing, which was ineffective by the length and complexity of the issues involved, and its ineffectiveness was compounded because ADAMS did not have her reading glasses or contact lenses.

27. Furthermore, due to the complicated range of medical needs and conditions, ADAMS could not effectively communicate her questions nor provide adequate information to Dr. Chaulagain, and again requested an interpreter.

28. ADAMS was informed of the medications she had been given and became upset that she was given a steroid due to her past severe depression and psychosis associated with that

class of drugs.

29. Dr. Chaulagain apologized for the administration of the drug.

30. Dr. Chaulagain tried to explain the proposed plan of a bone marrow biopsy follow by rituximab treatment through this ineffective method of writing.

31. ADAMS could not ask any questions regarding a procedure in which the patient is fully awake and has marrow removed from her bones in a painful procedure that involves a biopsy needle being inserted into a bone.

32. During the afternoon of December 6, 2018, a Gonzalo Arcentales, APRN, went to speak with ADAMS to discuss the bone marrow biopsy and aspiration procedure. Again, a sign language interpreter was present at that discussion.

33. CLEVELAND CLINC had a video relay interpreting (VRI) machine brought into the room but it did not function.

34. Despite knowing that the VRI was not functioning, and knowledge that communication was not effective, APRN Arcentales explained the procedure to ADAMS by "texting" on a cellphone.

35. The procedure was done three hours later and involved fentanyl-and-midazolam-induced conscious sedation followed by the direct aspiration of bone marrow from her illiac spine.

36. On the morning of December 7, 2018, Dr. Andrew Daya attended to ADAMS. A different video ASL translator was used to facilitate communication, but it did not perform as expected either, and in fact, according to Dr. Daya's notes, "impaired communication." ADAMS again requested a sign language interpreter.

37. On that same attestation, Dr. Daya stated, "WE THEREFORE NEED AN IN HOUSE SIGN LANGUAGE TRANSLATOR FOR THE PATIENT…This was communicated

that the patient ABSOLUTELY needs an in house translator to the nursing team."

38. While she requested an interpreter numerous times, this was, at minimum, the fifth time that ADAMS' request for an ASL interpreter had been recorded in the medical records of CLEVELAND CLINIC during her three days there, and she had yet to receive any functional accommodation for her hearing impairment.

39. Finally, on the morning of December 8, 2018, a sign language interpreter was finally provided to ADAMS; however, this was a simple round check by Dr. Stone, and ADAMS could only voice her frustration that she wanted to go home.

40. Later that day, when Dr. Stone returned, there was once again no ASL interpreter present.

41. For the dates of December 9 and 10, 2018, an ASL interpreter was not provided to Ms. ADAMS at any time.

42. On or about December 10, 2018 ADAMS was discharged from CLEVELAND CLINIC, without the use of any interpreting services.

43. During each day of ADAMS' treatment and stay at CLEVELAND CLINIC, ADAMS would inform Defendant that she was Deaf and required an interpreter to communicate with her nurses, doctors, anesthetists, and all other professionals. Specifically, ADAMS required a qualified ASL interpreter so that she could understand the treatment and procedures proposed to her by CLEVELAND CLINIC, and eventually performed on her by CLEVELAND CLINIC.

44. Despite the availability of many ASL interpreters and services in Palm Beach County, Defendant did not consistently secure an ASL translator for ADAMS, which deprived her of access to medical care equal to a person who is not Deaf.

45. Any other similarly situated hearing person would have been told about their

evaluations, medications, options, psychological treatment, options for treatment and discharge instructions.

46. Further, during ADAMS' treatment and stay at CLEVELAND CLINIC, CLEVELAND's staff conducted tests, performed procedures, and engaged in intensive medical intervention without effectively communicating with ADAMS, including failing to provide a qualified ASL interpreter.

47. During ADAMS' treatment and stay at CLEVELAND CLINIC, CLEVELAND's staff also attempted to communicate with ADAMS by writing in short messages on paper. This format, however, did not allow appropriate expressive or receptive communication, such as asking and responding to questions, and was not effective for ADAMS.

48. This difficulty was compounded by ADAMS' lack of reading glasses, which would not have been required for ASL communication.

49. The discrimination against ADAMS was committed with deliberate indifference to her protected rights.

50. Defendant has a pattern and practice of not providing ADAMS and other Deaf patients with a qualified ASL interpreters and/or attempts to use ineffective forms of communication or auxiliary aids that do not meet statutory requirements.

51. CLEVELAND's actions were the legal cause of ADAMS' injuries. As a result of the aforementioned acts and omissions of Defendant, ADAMS has suffered financial injury, mental anguish, grievous emotional distress, embarrassment, shame, worry, frustration, humiliation, and loss of capacity for the enjoyment of life. These losses are either permanent or continuing and ADAMS will suffer these losses in the future.

52. Each and all of the above acts, both of omission and commission, were acts of

discrimination done with deliberate indifference to ADAMS disabilities and each and all were a proximate cause of the damages suffered by ADAMS.

53. Plaintiff has employed the undersigned attorneys and has agreed to pay them a reasonable fee for their services herein.

## COUNT 1- VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

54. Plaintiff hereby reasserts by reference in this Count I the allegations of Paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55. ADAMS is Deaf and her disabilities substantially limit her in her major life activities, including her ability to effectively communicate with others who are not fluent in ASL. Therefore, ADAMS is a qualified individual with a disability under the RA.

56. Defendant is a recipient of federal financial assistance by virtue of receipt of Medicaid payments, as well as other federal financial assistance.

57. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to otherwise be discriminated against.

58. During ADAMS' treatment at CLEVELAND CLINIC, Defendant was aware that ADAMS is Deaf and communicates through ASL.

59. Defendant's doctors, nurses and all other staff who interacted with ADAMS had actual, recorded knowledge of her disability, yet, during ADAMS' admission to CLEVELAND CLINIC's ICU, Defendant failed to provide ADAMS with *any* appropriate and effective auxiliary aids and services, namely a qualified ASL interpreter, until four days after her admission into the ICU and after invasive operation had taken place.

60. By not using a qualified ASL interpreter, Defendant failed to fully explain the risks

of the procedures or treatment, failed to properly include ADAMS in decision-making related to her treatment, nor permit ADAMS to ask full, extensive questions or have a real understanding of the course of her care.

61. Because of the failure to provide effective communication, ADAMS and other Deaf patients have an incomplete understanding of what happens during each session, test, interaction or appointment.

62. Ultimately, ADAMS left CLEVELAND's facilities feeling uninformed, frustrated, and mistreated.

63. ADAMS is likely to return to CLEVELAND in the future in the event of a medical emergency due to proximity.

64. ADAMS was not properly informed of the treatment plans, therapy goals, and medication risks, nor given the opportunity to ask questions that any other non-hearing impaired person would ask.

65. CLEVELAND's staff indicated awareness that ADAMS is Deaf, but, despite this, CLEVELAND failed to effectively communicate with ADAMS during the crucial admission into the ICU and subsequent medical decision-making. This included failing to provide a qualified ASL interpreter until after all procedures had been completed.

66. Accordingly, CLEVELAND discriminated against ADAMS in the equal use of their facilities and as a result, ADAMS experienced mental anguish and humiliation in violation of her civil rights.

67. Further, CLEVELAND failed to provide services to ADAMS as they would have provided a similarly situated hearing patient.

68. CLEVELAND's policies, practices and procedures, particularly the actions and

omissions described above, violated ADAMS' rights under the RA by discriminating on the basis of a disability.

69. CLEVELAND has discriminated against ADAMS by failing to provide functional auxiliary aids and services necessary to ensure effective communication with individuals who are deaf or hard of hearing, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

70. At all times material to this case, the employees, staff and agents of CLEVELAND would have been able to communicate effectively with ADAMS, including obtaining accurate history and drug contraindications, if CLEVELAND had provided appropriate auxiliary aids and services, including qualified ASL interpreter services.

71. CLEVELAND knew that ADAMS would be harmed by their failure to provide appropriate auxiliary aids and services, including qualified ASL interpreter services.

72. CELEVELAND's actions were committed with reckless disregard and deliberate indifference to the rights and needs of ADAMS.

73. As a result of CLEVELAND's actions, ADAMS has been damaged and has suffered injuries and experienced emotional suffering, pain and anguish.

**WHEREFORE** Plaintiff, LINDA ROSE ADAMS, respectfully prays that this Court grant the following relief against Defendant, CLEVELAND CLINIC FLORIDA, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendant's practices, policies and procedures has subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act; permanently enjoining the Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services or which deny Plaintiff effective communication with Defendant. This includes entering a permanent injunction ordering Defendant:

   a. To cease discrimination against Plaintiff and all other deaf or hard of hearing patients;

   b. To promulgate and comply with policies and procedures to ensure that the Defendant and its staff do not discriminate against individuals who are deaf and hard of hearing;

   c. To promulgate and comply with procedures to ensure that the Defendant will provide and pay for ASL interpreter services when needed by individuals who are deaf or hard of hearing in all services offered by Defendant;

   d. To promulgate and comply with procedures to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that state that Defendant will provide ASL interpreters and/or other communication services that ensure effective communication with deaf or hard of hearing persons;

   e. Award compensatory damages to Plaintiff;

   f. Award reasonable costs and attorneys' fees; and

   g. Award any and all other relief deemed just and appropriate.

## COUNT II- VIOLATION OF TITLE III OF THE AMERICAN WITH DISABILITIES ACT (42 U.S.C. § 12181, et seq)

74. Plaintiff ADAMS hereby reasserts by reference in this Count II the allegations of Paragraphs 1 through 53 of this Complaint as if fully set forth herein.

75. Plaintiff's hearing loss substantially limits her in her major life activities, including her ability to effectively communicate.

76. Plaintiff is, therefore, an individual with disabilities under Title III of the ADA.

77. Plaintiff meets the essential eligibility requirements for Defendant's services at all times material hereto.

78. Plaintiff will likely return to Defendant's facilities in the near future and will be harmed by its discriminatory policies and procedures.

79. CLEVELAND violated Title III of the ADA in numerous ways, including but not limited to discriminatory actions and conduct such as:

   a. Failing to maintain policies and procedures to ensure compliance with Title III of the ADA, specifically policies that provide equal access and effective communication to individuals with disabilities. 28 C.F.R. § 36.303(a);

   b. Failing to ensure that communications with Plaintiff were as effective as communications with non-disabled patients and/or companions. 28 C.F.R. § 36.303(a);

   c. Failing to provide auxiliary aids and services, including a qualified ASL interpreter, and to modify policies and procedures to prevent discrimination against Plaintiff. 28 C.F.R. § 36.303(a); 28 C.F.R. § 36.302(a); and

   d. Excluding Plaintiff from services of the public entity and denied Plaintiff the benefit of these services due to her disabilities. 28 C.F.R. § 36.202(a).

80. CLEVELAND had knowledge of its obligations under the ADA and was deliberately indifferent to the rights of ADAMS.

81. Defendant knew that Plaintiff would be harmed by its failure to provide appropriate auxiliary aids and services, including qualified ASL interpreter services.

**WHEREFORE**, Plaintiff, LINDA ROSE ADAMS, respectfully pray that this Court enter judgment in their favor to declare that Defendant's, CELEVELAND CLINIC FLORIDA, acts and omissions violated Title III of the Americans with Disabilities Act, to permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to,

and benefit from, Defendant's services or which deny Plaintiff effective communication with Defendant, award further enforcement and other equitable relief to ensure that such training and policies are maintained in the future, and to award reasonable attorneys' fees and costs, and any and all other relief deemed just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY FOR ALL ISSUES FOR WHICH A TRIAL BY JURY IS PERMITED.**

Respectfully submitted this 20th day of February 2020.

> DISABILITY INDEPENDENCE GROUP, INC.
> 2990 Southwest 35th Avenue
> Miami, Florida 33133
> Telephone: (305) 669-2822
> Facsimile: (305) 442-4181
> mdietz@justdigit.org
> aa@justdigit.org
>
>
> By: */s/Matthew W. Dietz*
> Matthew W. Dietz, Esq.
> Florida Bar No. 0084905