UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-80247-RAR

**LINDA ROSE ADAMS**,

    Plaintiff,

v.

**CLEVELAND CLINIC FLORIDA**,

    Defendant.

_____/

## ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AND HOLDING DEFENDANT IN CONTEMPT OF COURT

When a court undertakes the obligation to enforce a settlement agreement by retaining jurisdiction, it is charged with ensuring compliance. In the case of an especially recalcitrant and dilatory party refusing to comply with their settlement obligations, ensuring compliance can lead a court to rely on its inherent civil contempt power. That is the situation presented here.

Before the Court is Plaintiff Linda Rose Adams' Fourth Motion to Enforce Settlement and Hold Defendant in Contempt of this Court's Orders [ECF No. 100] ("Motion"). The Court held a hearing on the Motion the day it was filed, [ECF No. 103] ("Hearing"), and has reviewed Plaintiff's subsequent Notice of Impasse [ECF No. 105]. As explained below, the Court will no longer tolerate Defendant's contumacious disregard for this Court's directives, which has unnecessarily delayed—*for over a year*—the completion of disability training to ensure that the staff of the Cleveland Clinic of Florida know how to communicate with the hearing-impaired. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Fourth Motion to Enforce Settlement and Hold Defendant in Contempt of this Court's Orders [ECF No. 100] is **GRANTED** as set forth herein.

## BACKGROUND

Ms. Adams—who is hearing-impaired—brought this case against Cleveland Clinic Florida ("CCF") asserting violations of section 504 of the Rehabilitation Act, 28 U.S.C. § 794, and Title III of the American With Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See generally* Compl. [ECF No. 1]. Ms. Adams averred that upon being treated by CCF for a serious medical condition, CCF failed to provide an American Sign Language interpreter so she could fully understand the treatment and procedures proposed by CCF. *Id.* The parties appeared before a Magistrate Judge for a settlement conference on November 23, 2020 [ECF No. 59], entered into a mediated settlement agreement, *id.*, and filed their Joint Stipulation of Dismissal with Prejudice on December 7, 2020. *See* Settlement Agreement and Release [ECF No. 60-1] ("Settlement Agreement"). The parties requested that the Court retain jurisdiction to enforce the terms of the Settlement Agreement and the Court obliged. *See* Order of Dismissal [ECF No. 61].

The Settlement Agreement provided, among other requirements, that "[w]ithin two months of the Effective Date, CCF shall conduct training for all patient care staff on the [Florida American Sign Language Interpretation and Translation Services] Policy and all patient care staff shall attend such training." Settlement Agreement at 2. However, the training was not completed by an individual knowledgeable about effective communication with the deaf, and the training module was not mutually agreed to by the parties—both requirements under the Settlement Agreement. *Id.* In fact, Plaintiff's counsel was never notified as to whether the training was done and who performed the training. As such, Plaintiff's counsel filed his First Motion to Enforce Settlement Agreement on February 26, 2021 [ECF No. 62] ("First Motion"). The First Motion was referred to the Magistrate Judge [ECF No. 63], but the parties ultimately resolved the issue and agreed upon a new timeline to complete the training set forth in the Settlement Agreement—which was

memorialized by the Magistrate Judge. *See* Agreed Order on Plaintiff's Motion to Enforce Settlement [ECF No. 72].

That agreement was short-lived, however. A Second Motion to Enforce Settlement Agreement was filed on June 6, 2021 [ECF No. 74] given CCF's continued non-compliance with the parties' agreed-upon deadlines for completion of the necessary training and defense counsel's failure to certify completion of the same. A Third Motion to Enforce Settlement Agreement and for an Order to Show Cause [ECF No. 79] soon followed on June 30, 2021. After a hearing before the Magistrate Judge, [ECF No. 87], the Court entered an Order, which gave the Defendant another 60 days to complete the video training module for this hospital, and another 90 days thereafter to have their patient care staff view the video and implement the policy. *See* Second Agreed Order to Enforce Settlement [ECF No. 91] at 1.

Over the course of the next five months, Defendant's counsel filed three motions for extensions of time to conduct video training, citing various alleged setbacks and vague references to the COVID-19 pandemic. *See* [ECF Nos. 92, 94, 96]. In granting Defendant's Third Motion for Extension of Time, the Court stated: "Defendant shall complete video training by **January 21, 2022**. Defendant is advised that no further extensions of time will be granted absent extenuating circumstances." *See* Paperless Order Granting Defendant's Motion for Extension of Time to Conduct Video Training [ECF No. 97] (emphasis in original). On January 21, 2022, Defendant filed a status report stating that Defendant's "staff ha[d] not received the modified training that was approved by the parties." Defendant's Status Report [ECF No. 98] at ¶ 3. The only excuse that was given was that "certain logistical issues that [Defendant's] counsel did not anticipate, as well as certain issues regarding [Defendant's] counsel that were previously communicated to the Court, have delayed the training beyond what Defendant and its counsel had intended." *Id*. at ¶ 2.

A week later, Defendant submitted a second status report stating, "CCF shall report to the Court on Friday, January 28, 2022, as to the status of the talks between counsel for the parties on the resolution of completing the Video Training.  Undersigned counsel needs to consult with additional people with respect to certain timing issues and will continue good faith discussions with Plaintiff's counsel."  Defendant's (Amended) Status Report [ECF No. 99].  But Defendant's counsel did not report to the Court on January 28, 2022.  Instead, Plaintiff filed the instant Motion leading the Court to hold a Hearing on the matter.

At the Hearing, the Court confronted defense counsel, Ron Rosengarten, regarding Defendant's abject failure to comply with the Settlement Agreement.  Mr. Rosengarten acknowledged Defendant's non-compliance with prior Court orders enforcing the settlement agreement, and recognized CCF's overall ineptitude in ensuring completion of the requisite training.  Mr. Rosengarten then informed the Court that he was in discussions with Plaintiff's counsel to submit yet another agreed order that would contemplate sanctions for future non-compliance—and requested that the Court give him an opportunity to finalize such an agreement.  Plaintiff's counsel, Matthew Dietz, warily confirmed that discussions were ongoing, but no agreement had been reached.  Accordingly, the Court informed the parties that it would hold off on addressing the Motion in order to give the parties an opportunity to reach a resolution.  The Court also warned Mr. Rosengarten that should the parties not reach an agreement, the Court would entertain a finding of contempt against Defendant and impose sanctions.  Mr. Rosengarten confirmed that he understood the repercussions for continued noncompliance.

The Court memorialized its decision at the conclusion of the Hearing by entering a Paperless Order stating that by "Friday, January 28, 2022 at 5:00 p.m., the parties shall file a joint stipulation and proposed order regarding the Motion to Enforce."  [ECF No. 104].  The Order specifically stated that "[s]hould the parties fail to reach a resolution, the Court will address the

Motion to Enforce on the merits." *Id.* Shortly before 5:00 p.m. on January 28, 2022, Mr. Rosengarten called the Court's chambers, *ex parte*, to inform the Court that a deal would not be reached by 5:00 p.m. and he "didn't want to get into trouble" but needed more time. Opposing counsel, however, had not consented to this representation, and filed a Notice of Impasse [ECF No. 105] stating that "the parties have NOT resolved the issues related to Plaintiff's Fourth Motion to Enforce Settlement . . . and . . . the undersigned gave no authority whatsoever for counsel for the Defendant to have ex-parte discussions with chambers related to counsel for the Defendant's rendition of settlement negotiations. As such the Plaintiff would like a ruling on this motion."

## **LEGAL STANDARD**

All federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties. *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006) (citing *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1446 (11th Cir. 1985)). Civil contempt is a sanction to coerce a defendant into compliance with a lawful court order or to compensate a wronged party. *United States v. Mine Workers*, 330 U.S. 258 (1947); *see also South Beach Suncare, Inc. v. Sea & Ski Corp.*, No. 98-1114, 1999 WL 350458, at *5 (S.D. Fla. May 17, 1999). "A judgment of civil contempt is conditional, and may be lifted if the contemnor purges himself of the contempt." *United States v. Rizzo*, 539 F.2d 458, 463 (5th Cir. 1976). It is thus distinguishable from criminal contempt, which is punitive in its nature and imposed for the purpose of vindicating the authority of the court. *Id.* Moreover, unlike criminal contempt, specific intent or willfulness need not be shown to trigger a civil contempt enforcement procedure to obtain compliance with an order. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *see also F.T.C. v. Leshin*, 618 F.3d 1221, 1232-33 (11th Cir. 2010).

A party is in civil contempt when it is shown by "clear and convincing evidence that (1) the alleged contemnor has violated an outstanding court order; and (2) the defendant fails to show

that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid." *S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1326 (S.D. Fla. 2010), *aff'd*, 396 F. App'x 635 (11th Cir. 2010) (citing *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992)) (internal quotation marks omitted); *see also Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998). Once the party seeking contempt makes this prima facie showing, the burden shifts to the alleged contemnor to produce detailed evidence specifically explaining why he cannot comply and why, in good faith, the contemnor made all reasonable efforts to comply with the order. *Burgess*, 143 F.3d at 1436. If the alleged contemnor makes such a sufficient showing, the burden then shifts back to the party seeking to show contempt to prove the ability of the alleged contemnor to comply with the court's prior order. *See Commodity Futures Trading Comm'n*, 950 F.2d at 1529.

The Eleventh Circuit has held that a private settlement agreement can be enforced through the district court's civil contempt power where the court has retained jurisdiction to enforce its terms. *See American Disability Association, Inc. v. Chmielarz*, 289 F.2d 1315, 1321 (11th Cir. 2002). In so holding, the Eleventh Circuit reasoned that by approving a settlement agreement and retaining jurisdiction to enforce its terms, a district court "effect[s] precisely the same result as would have been achieved pursuant to a consent decree." *Id.* at 1321.

A party's failure to comply with any order of the court also triggers the court's contempt authority. "Courts have embraced an inherent contempt authority that encompasses the ability to impose civil and criminal contempt." *Serra Chevrolet, Inc.*, 446 F.3d at 1147 (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994)) (internal quotation marks omitted). "[A] contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant.'" *Bagwell*, 512 U.S. at 827-28 (quoting *Gompers v. Bucks Stove & Range Co.*, 221

U.S. 418, 441 (1911)). Civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Id.*

Once the court determines that a party is in civil contempt, the Court enjoys "wide discretion to fashion an equitable remedy . . . that is appropriate to the circumstances." *United States v. City of Miami,* 195 F.3d 1292, 1298 (11th Cir. 1999) (citing *E.E.O.C. v. Guardian Pools, Inc.,* 828 F.2d 1507, 1515 (11th Cir. 1987)); *see also Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021) ("[C]ourts have the inherent power to fashion an appropriate sanction for conduct which abuses the judicial process.") (internal quotation marks omitted). However, "[c]ivil contempt sanctions may not be used to impose what amounts to a punitive or criminal contempt sanction." *Id.* When crafting a sanction, the Court must take into account the purpose of civil contempt sanctions, which is "either (1) to coerce a contemnor to comply with a court order; or (2) to compensate a party for losses suffered as a result of the contemnor's act." *S.E.C. v. Greenberg*, 105 F. Supp. 3d 1342, 1355–56 (S.D. Fla. 2015).

The Eleventh Circuit has recognized that "[i]mposing a financial penalty often will be the most effective and fair means of enforcing [compliance with sanctions.]" *Johnson*, 9 F.4th at 1316. "Monetary sanctions may be imposed so long as they are imposed in accordance with due process." *Id*. (holding that providing a party with fair notice satisfied the due process requirement of imposing a financial penalty on a party). Similarly, when imposing sanctions for civil contempt outside of Rule 11, the Court may impose "a coercive daily fine." *Mesa v. Luis Garcia Land Serv., Co.*, 218 F. Supp. 3d 1375, 1380 (S.D. Fla. 2016).

**ANALYSIS**

As acknowledged by Mr. Rosengarten himself at the Hearing—which constituted notice and an opportunity to be heard on Plaintiff's Motion—it is undisputed that Defendant has not completed the training it agreed to undertake when it entered into the Settlement Agreement. The

Settlement Agreement, executed in December 2020, states that "[w]ithin two months . . . CCF shall conduct training for all patient care staff on the [Florida American Sign Language Interpretation and Translation Services] Policy and all patient care staff shall attend such training." It is now January 2022 and Defendant—**over a year since entering into the Settlement Agreement**—has failed to provide Plaintiff's counsel and this Court with a certification that each patient care staff member has received the training at issue.

Both required prongs for a finding of civil contempt are present here.  First, there is "clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Solow*, 682 F. Supp. 2d at 1326.  Specifically, Mr. Rosengarten has repeatedly admitted that CCF has failed to comply with the Settlement Agreement—in two status reports [ECF Nos. 98 & 99] and at the Hearing [ECF No. 103].  And second, Defendant has failed to show that it "has made 'in good faith all reasonable efforts' to meet the terms of the court order[,]" because no legitimate excuse has been given for the extraordinary delay.  *Solow*, 682 F. Supp. 2d at 1326.  Absent a brief delay due to defense counsel contracting COVID-19 in December 2021, 8 months after the first deadline to complete video training, Mr. Rosengarten has provided no excuse for his client's blatant failure to comply with this Court's orders and effectuate the terms of the Settlement Agreement.  Notably, as Plaintiff points out in her Motion, compliance with Court orders and the Settlement Agreement in this case would merely require Defendant's "staff [to] watch a 15 minute . . . video produced by the Defendant which is a voice-over of counsel for the Defendant showing a PowerPoint presentation." Mot. at 3.  Yet Defendant is still in noncompliance.

To make matters worse, Mr. Rosengarten, on behalf of Defendant, has continuously run afoul of court-imposed deadlines, misrepresented his interactions with Plaintiff's counsel, and most recently attempted to engage in an impermissible *ex parte* communication with the Court.  The Court explicitly advised Mr. Rosengarten that a coercive daily fine would be imposed upon a

finding of contempt should Defendant fail to reach an agreement with opposing counsel. That warning has gone entirely unheeded. Thus, a finding of contempt is warranted.

Lastly, the Court finds it impossible that a health system entrusted with the care of millions of patients on an annual basis, and with revenues exceeding $10 Billion a year,[1] is incapable of showing its employees a 15-minute video to help ensure that deaf patients are treated equitably when presenting at one of their facilities. Due to the sheer size and capabilities of Defendant as a corporate entity, the Court finds that a $1,000.00 daily fine is a reasonable amount "to coerce [Defendant] to comply" with the parties' Settlement Agreement. *Greenberg*, 105 F. Supp. 3d. at 1355–56.

## **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Fourth Motion to Enforce Settlement and Hold Defendant in Contempt of this Court's Orders [ECF No. 100] is **GRANTED**.

2. Pursuant to its inherent civil contempt power, the Court concludes that Defendant is in civil contempt of Court for its failure to comply with the Settlement Agreement and this Court's Orders.

3. Defendant shall pay reasonable expenses, including attorney's fees, incurred by Plaintiff in connection with Defendant's failure to comply with the Settlement Agreement. Plaintiff shall file an affidavit within ten (10) days of the entry of this Order indicating the attorney's fees and costs incurred by Plaintiff in connection with Defendant's failure to comply with the Settlement Agreement.

---

[1] *Facts and Figures*, THE CLEVELAND CLINIC (last visited January 31, 2022), https://my.clevelandclinic.org/about/overview/who-we-are/facts-figures

4.      In order to induce Defendant to comply with the requirements of the Settlement Agreement, the Court hereby imposes a conditional fine of $1,000.00 per day for each day Defendant fails to complete its obligations under the Settlement Agreement, which fine shall begin accruing from the date of this Order.  Defendant may purge itself of the contempt by complying with all of its obligations under the Settlement Agreement.  Once Defendant purges itself of the contempt, the fine imposed by this Order shall cease accruing.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 31st day of January, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**